IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Frank Palladini, | NO. C 06-00779 JW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| City of Milpitas, et al., | |
| Defendants. | |

## I. INTRODUCTION

Frank Pallidini ("Plaintiff"), the owner of Little Franks Bar and Grill ("Little Franks") brings this action against the City of Milpitas ("City") and various individual Milpitas police officers,[1] individually and in their capacity as police officers (collectively, "Defendants"), alleging violations of his First, Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, and Article I, §§ 7(a) and 13 of the California Constitution. Plaintiff alleges that Defendants have maintained an unreasonable police presence at Little Franks and harassed and intimidated Plaintiff's clientele.

---

[1] The Individual Defendants are Thomas Nishisaka, Charles Lawson, Eric Emmanuelle, John Buchanok, Henry Kwong, Kevin Mosquza, David Morris, Raj Maharaj, Mark Doyle, and Pheak Kor ("Individual Defendants").

*United States District Court — For the Northern District of California*

Presently before the Court is Defendants' Motion for Summary Judgment.[2] The Court conducted a hearing on February 2, 2009. Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

## II. BACKGROUND

Plaintiff is the owner of Little Franks, located at 38 N. Main Street, Milpitas, California.[3] He purchased the lease and business (formerly known as "Norma's Living Room") in February 2003.[4] Little Franks is located underneath the 237 Calaveras overpass, which is essentially the cross-section of Milpitas' two main thoroughfares.[5]

Although the parties dispute the precise frequency of police presence at Little Franks, it is undisputed that Little Franks has been the site of "a police event"[6] at least 379 times between 2003 and May 2008. (Pangelinan Decl. ¶ 9.) Plaintiff contends that Milpitas police have harassed, annoyed and abused him and Little Franks' patrons by: (1) performing unnecessary police sweeps of Little Franks; (2) maintaining their presence in Little Franks for hours at a time; (3) parking police cars outside of Little Franks; (4) threatening unjustified formal police action against Little Franks customers; and (4) holding and questioning Little Franks customers without probable cause.[7]

---

[2] (Defendants' Corrected Motion for Summary Judgment, or Alternatively Summary Adjudication, hereafter, "Motion," Docket Item No. 85.)

[3] (Plaintiff's Second Amended Complaint for Violation of Civil Rights and For Injunctive Relief ¶ 1, hereafter, "Complaint," Docket Item No. 14.)

[4] (Declaration of Tricia L. Hynes in Support of Motion for Summary Judgment, hereafter, "Hynes Decl.," Ex. A at 27-28, hereafter, "Palladini Depo.," Docket Item No. 86.)

[5] (Declaration of Steve Pangelinan in Support of Defendants' Motion for Summary Judgment ¶ 2, hereafter, "Pangelinan Decl.," Docket Item No. 88.)

[6] Although it is not entirely clear from the parties' briefs, the parties appear to use this phrase to describe the number of times Milpitas police officers have visited Little Franks, either because they were responding to calls or performing their routine site visits.

[7] (Declaration of Plaintiff Frank Palladini in Support of Opposition to Summary Judgment ¶ 10, hereafter, "Palladini Decl.," Docket Item No. 108.)

On December 16, 2005, Plaintiff filed this action in California Superior Court.  (See Docket Item No. 1.)  On February 3, 2006, Defendants removed the action to federal court pursuant to 28 U.S.C. § 1331.  On May 15, 2006, Plaintiff filed his Second Amended Complaint alleging four causes of action:  (1) Violations of 42 U.S.C. § 1983; (2) Violations of 42 U.S.C. § 1985; (3) Violations of 42 U.S.C. § 1986; and (4) Violations of Article I, §§ 7(a) (due process) and 13 (unlawful search and seizure) of the California Constitution.

Presently before the Court is Defendants' Motion for Summary Judgment.

### III.  STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ."  Id. at 323.  "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded.  See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992).  The court determines whether the non-moving party's "specific facts," coupled with disputed background or

1  contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.
2  T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).  In such a case,
3  summary judgment is inappropriate.  Anderson, 477 U.S. at 248.  However, where a rational trier of
4  fact could not find for the non-moving party based on the record as a whole, there is no "genuine
5  issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV.  DISCUSSION

### A.  Standing

As an initial matter, Defendants move for summary judgment on all constitutional claims asserted by Plaintiff, on behalf of his patrons, on the ground that Plaintiff lacks standing to bring such claims.  (Motion at 8.)

Generally, "a litigant only has standing to vindicate his own constitutional rights."  Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984).  For example, a vendor who brings an action predicated on past violations of his patrons' constitutional rights does not have standing because the payment of damages to the vendor will not redress the violations incurred by his patrons.  See RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1055 (9th Cir. 2002).  However, this general principle does not apply when a plaintiff brings a facial challenge to the constitutionality of a statute.  See Taxpayers for Vincent, 466 U.S. at 798.

Here, in his Opposition, Plaintiff contends that "[his] claims are stated by him and his patrons, [and] case law substantiates that he has standing to assert those claims."  (Plaintiff's Opposition to Summary Judgment at 5, hereafter, "Opposition," Docket Item No. 106.)  However, upon review of Plaintiff's Complaint, the Court finds no allegations or claims on behalf of Little Franks' patrons with respect to deprivation of constitutional rights.  Indeed, the Complaint clearly states that "[t]his is an action at law and in equity to redress the deprivation by Defendants . . . of Plaintiff's rights, privileges and immunities secured to Plaintiff by the First, Fourth, and Fourteenth Amendments to the Constitution . . . and Articles I, § 7(a) and § 13 of the California Constitution . . . ."  (Complaint ¶ 16.)  Thus, the Court finds Plaintiff's assertion that he is also

4

pursuing claims on behalf of his patrons improper at this stage of the litigation because the operative Complaint makes no such claims. Further, to the extent Plaintiff now seeks to bring claims on behalf of his patrons, the Court finds that such claims are both untimely and unavailable as a matter of law. See RK Ventures, Inc., 307 F.3d at 1055.

Accordingly, the Court GRANTS Defendants' motion for summary judgment on the issue that Plaintiff may only prosecute claims on behalf of himself as stated in his Complaint.

**B.     First Cause of Action:  § 1983**

Plaintiff's § 1983 claim is asserted against both the Individual Defendants and the City of Milpitas. Defendants move for summary judgment on the ground that Plaintiff has failed to provide any evidence showing a violation of his civil rights by the Individual Defendants or the City. (Motion at 8.)

To establish a violation of § 1983 against an official, a plaintiff must show that the official deprived him of a right secured by the Constitution of the United States and that the official did so "under the color of law." Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970). An official acts under the color of law when he engages in the "misuse of power, possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." Monroe v. Pape, 365 U.S. 167, 184 (1961).

To establish a violation of § 1983 against a public entity or a supervisor not personally involved in the alleged violation, a plaintiff must show that those defendants acted as "lawmakers or . . . those whose edicts may fairly be said to represent official policy." Monell v. Dep't of Soc. Serv. City of New York, 436 U.S. 658, 691 (1978). "While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights." Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994). Thus, municipal defendants cannot be held liable when no constitutional violation has occurred. Id. In addition, liability must be based on enforcement of a policy or custom that causes the deprivation of a plaintiff's constitutional right, and not upon the municipality's mere employment of a constitutional tortfeasor. Monell, 436 U.S. at 691. Further, a

5

1  plaintiff must show that there is a nexus between the specific policy or custom to his or her

2  constitutional injury. Id. at 690-92.  Similarly, liability as a supervisor depends upon whether the

3  supervisor "set in motion a series of acts by others, or knowingly refused to terminate a series of acts

4  by others, which he knew or reasonably should have known, would cause others to inflict the

5  constitutional injury." Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

6  In this case, Plaintiff predicates his § 1983 claim on violations of three constitutional rights:

7  (1) Plaintiff's First Amendment right to freedom of association; (2) Plaintiff's Fourth Amendment

8  right to be secure from unreasonable searches and seizures; and (3) Plaintiff's Fourteenth

9  Amendment right to due process.  (Opposition at 6-8.)  The Court considers each claim in turn.

**1.     First Amendment**

Defendants move for summary judgment on Plaintiff's First Amendment claim on the ground that there is no evidence that Plaintiff has ever engaged in protected expressive activity at Little Franks.  (Motion at 11-12.)

The First Amendment protects two types of associational freedom:  (1) the choice to enter into and maintain certain "intimate human relationships," and (2) the right to associate for the purpose of engaging in the expressive activities protected by the First Amendment. Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984).  Neither associational freedom creates a "generalized right of 'social association' that includes chance encounters" in dance halls, night clubs or bars. Freeman v. City of Santa Ana, 68 F.3d 1180, 1188 (9th Cir. 1995) (quoting City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989)).

Here, Defendants submit portions of Plaintiff's deposition testimony as evidence that Plaintiff did not engage in political discussions at Little Franks:

Q:     And when is the last time you remember talking about politics in your bar?

A:     I don't really talk politics in my bar.

Q:     Okay.

A:     Unless it's Hillary.

. . .

6

1      A:    Well, about the only thing, if it's anything to do with–well, the only thing political I talk about in that, is about the police department, and that's only because I don't understand why they got to keep coming down on me all the time. But that's it.

3 (Palladini Depo. at 105.) Contrary to Defendants' contention, the excerpt above, on its face, shows

4 that Plaintiff did engage in political discussion at his establishment. Although Plaintiff testified that

5 he did not "really talk politics," he qualified that statement by stating that he did discuss "Hillary"

6 and the local police department. This is further collaborated by Plaintiff's declaration in which he

7 states: "I do speak about politics, while at Little Franks, specifically, Hillary Clinton, I also am very

8 vocal and discuss politics as it relates to the Milpitas police and Milpitas city counsel [sic]."

9 (Palladini Decl. ¶ 14.) Thus, the Court finds that there is a genuine issue of material fact as to

10 whether Plaintiff engaged in expressive activity at Little Franks.

11     Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's First Amendment

12 Claim.

13     **2.    Fourth Amendment**

14     Defendants move for summary judgment on Plaintiff's Fourth Amendment claim on the

15 grounds that Plaintiff has no evidence of any unreasonable searches or seizures taking place inside

16 Little Franks. (Motion at 13.)

17     The Fourth Amendment protects against unreasonable searches and seizures. When a police

18 officer enters a commercial area and examines it in the same way as any person may be expected to,

19 the officer has not conducted a "search" within the meaning of the Fourth Amendment. Zimmerman

20 v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) (citing Katz v. United States, 389 U.S. 347,

21 351 (1967)). Further, a police officer in California is permitted to "visit and inspect the premises" of

22 an establishment selling alcohol "at any time." Cal. Bus. & Prof. Code § 25755. Thus, a police

23 officer does not need a warrant to enter and inspect a publicly accessible bar. However, an officer's

24 presence within a bar can become unreasonable, and violate the Fourth Amendment, if the officer's

25 conduct ceases to be "objectively reasonable in light of the facts and circumstances confronting

26 them, without regard to their underlying intent or motivation." Freeman, 68 F.3d at 1186 (quoting

Graham v. Connor, 490 U.S. 386, 397 (1989)). Whether, after an initially reasonable search and seizure of a bar, police conduct crosses the line so as to become unreasonable is a question for the trier of fact. Id.

In this case, Defendants submit evidence indicating that, with 166 "bar checks" between January 2004 and October 2007, Little Franks is the least bar checked establishment in Milpitas.[8] (See Pangelinan Decl., Ex. B.) In addition, Defendants provide numerous police reports indicating that Little Franks has been the site of 379 "police events" between 2003 and 2008. (See Pangelinan Decl., Ex. A.) Defendants also provide summaries of various video recordings made by Plaintiff, and contend that the videos show that the Milpitas police were not spending an unreasonable amount of time at Little Franks. (See Hynes Decl., Ex. C.)

Although Defendants' evidence supports their contention that the police did not bar check Little Franks in an unreasonable number of times in comparison to other establishments, Defendants' evidence regarding the video recordings does not conclusively establish that Defendants never engaged in an unreasonable search and seizure of Little Franks. Defendants assume that Plaintiff's Fourth Amendment right could have only been violated if Defendants bar checked Little Franks an unreasonable number of times. However, the police may have effected an unreasonable search and seizure during any given sweep of Little Franks by spending an unreasonable amount of time in the bar and engaging in unreasonable searches.[9]

Plaintiff's declaration speaks directly to this possibility:

> The Defendants harassed, annoyed, and abused my customers by performing unnecessary police sweeps of Little Franks. The police would position Police Officers in Little Franks for hours at a time. . . . The police would threaten unjustified formal police

---

[8] According to the documents provided by Defendants, the following establishments were bar checked a greater number of times than Little Franks: Dave & Busters, 1,869; The Palms, 336; and Galaxy, 298. (See Pangelinan Decl., Ex. B.)

[9] See, e.g. Benigni v. City of Hemet, 879 F.2d 473, 477 (9th Cir. 1988) (upholding a jury verdict finding a Fourth Amendment violation where the evidence at trial showed that police officers bar checked a bar up to six times per night, searched drawers, shined flashlights in patron's faces, requested identification of persons obviously over 21 and walked through the bar with their hands on their guns).

> actions against my customers. The police would stop, hold, and question my customers without probable cause.
>
> In one instance, a Milpitas police officer actually demanded and then seized a videotape from my business, without a warrant, nor subpoena, over my objection.

(Pallidini Decl. ¶¶ 10-11.) The Court finds that Plaintiff has produced sufficient evidence to create a genuine issue of material fact. A reasonable jury, examining the totality of the circumstances, could find that Defendants' conduct constituted unreasonable search and seizure of Little Franks.

Accordingly, the Court DENIES Defendants' motion for summary judgment of Plaintiff's Fourth Amendment claim.

### 3. Fourteenth Amendment

Defendants move for summary judgment on Plaintiff's Fourteenth Amendment claim on the ground that the same evidence showing that his First and Fourth Amendment rights have not been violated, also shows that his Fourteenth Amendment right to due process has also not been violated. (Motion at 17.) Plaintiff's Complaint does not indicate whether his due process claim is predicated on procedural or substantive due process. However, at the hearing on the motion, Plaintiff's counsel represented that Plaintiff was not attempting to assert a procedural due process claim.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)). The first step in any such claim is to identify the specific constitutional right allegedly infringed. Albright, 510 U.S. at 271. "Where a particular Amendment 'provides an explicit textual source of constitutional protection'" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide of analyzing these claims." Albright, 510 U.S. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). For example, "[f]ailure to observe the requirements of the Fourth Amendment will not support an independent claim for a failure of due process, particularly in [a] case, where the facts supporting each claim are identical." Simons v. Marin County, 682 F. Supp. 1463, 1470 (N.D. Cal. 1987). In other words, if the Fourth

9

1 Amendment, which specifically governs the standards for searches and seizures, has not been
2 breached, a plaintiff will not be able to state a claim under the more general Fourteenth Amendment
3 standard. See id. at 1470.

4 In addition, "[t]he Fourteenth Amendment does not protect against all deprivations of liberty.
5 It protects only against deprivations of liberty accomplished 'without due process of law.'" Baker,
6 443 U.S. at 145. "The concept of 'substantive due process,' . . . forbids the government from
7 depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or
8 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles,
9 147 F.3d 867, 871 (9th Cir. 1998); Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992).
10 Thus, substantive due process does not protect individuals from all governmental actions that
11 infringe liberty in violation of some law. Santiago de Castro v. Medina, 943 F.2d 129, 130-31 (1st
12 Cir. 1991). Courts must resist the temptation to augment the substantive reach of the Fourteenth
13 Amendment, "particularly if it requires redefining the category of rights deemed to be fundamental."
14 Michael H. v. Gerald D., 491 U.S. 110 (1989); Bowers v. Hardwick, 478 U.S. 186, 194-95 (1986).

15 Here, in his Opposition, Plaintiff has failed to provide any evidence that he is entitled to
16 maintain a Fourteenth Amendment due process claim, as the facts relating to this claim appear to be
17 the same as those supporting his First and Fourth Amendment claims. Given the legal framework
18 provided above, Plaintiff cannot maintain an independent Fourteenth Amendment claim based on
19 the same facts. Thus, the Court finds that it is unable to augment Plaintiff's First and Fourth
20 Amendment claims within the Fourteenth Amendment's substantive reach.

21 Accordingly, the Court GRANTS Defendants' motion for summary judgment as to
22 Plaintiff's Fourteenth Amendment substantive due process claim.

23 **C.      Second and Third Causes of Action:  §§ 1985 and 1986**

24 Defendants move for summary judgment on Plaintiff's Second and Third Causes of Action
25 on the ground that Plaintiff has failed to produce any evidence of a conspiracy to violate his

10

constitutional rights, or that his rights were violated due to racial animus on the part of the Defendants. (Motion at 22.)

To establish a violation of § 1985(3),[10] a plaintiff must prove (1) a conspiracy existed to deprive the plaintiff of constitutional rights; (2) the conspiracy had a discriminatory animus; and (3) the conspiracy's focus was to interfere with rights which are protected against private and official encroachment. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993). To establish a violation of § 1986, a plaintiff must establish that a person, having knowledge of a § 1985 conspiracy and the power to prevent or aid in the prevention of the conspiracy's wrongful purpose, neglected or refused to do so. 42 U.S.C. § 1986.

Here, Plaintiff fails to provide any evidence of an agreement designed to violate his rights or that any of the purported constitutional violations discussed above were motivated by racial discriminatory animus. Although his Complaint alleges that "Defendants' actions are racially motivated, due to the fact that he is Italian-American and has the appearance of [sic] Caucasian," Plaintiff cannot survive summary judgment on allegations alone.[11] Since Plaintiff has failed to produce any evidence concerning a violation of § 1985, his Second and Third Causes of Action must fail.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's Second and Third Causes of Action for violations of 42 U.S.C. §§ 1985 and 1986.

**D.  Fourth Cause of Action: California Constitution**

Defendants move for summary judgment on Plaintiff's Fourth Cause of Action on the ground that his failure to establish any genuine issues of material fact with respect to a violation of his rights under the United States Constitution establishes his inability to do so under the California Constitution. (Motion at 23.) Since Defendants only move for summary on this ground, and the

---

[10] Although not explicitly stated in his Complaint, the Court finds that Plaintiff's § 1985 claim must be brought under § 1985(3).

[11] Conclusory allegations unsupported by factual data are insufficient to defeat a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

11

1 Court has found that there are genuine issues of material fact with respect to Plaintiff's First and
2 Fourth Amendment claims, the Court DENIES Defendant's motion for summary judgment as to
3 Plaintiff's Fourth Cause of Action for violations of Article I, §§ 7(a) and 13 of the California
4 Constitution.

### E.  **Qualified Immunity**

Defendants move for summary judgment on all of Plaintiff's claims on the ground that the Individual Defendants are entitled to qualified immunity. (Motion at 21.) Defendants contend that the relatively few number of bar checks at Little Franks despite a significant number of calls for police service show that the police acted reasonably. (Motion at 21.)

Qualified immunity is a defense against liability available to government officials who perform executive and administrative functions and who are sued for monetary relief in their personal capacities. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The doctrine shields public officers from "undue interference with their duties and potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982); Brosseau v. Haugen, 543 U.S. 194 (2004). To determine whether a public official is entitled to qualified immunity from § 1983 liability, a court must consider (1) whether the plaintiff has identified a specific federal law or constitutional right that allegedly has been violated; (2) whether that right was so clearly established as to alert a reasonable officer to its parameters; and (3) whether a reasonable officer could have believed his or her conduct was lawful. See Sweaney v. Ada County, 119 F.3d 1385, 1388 (9th Cir. 1997) (citing Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996)).

Here, the Court has found that there are genuine issues of material fact as to whether Plaintiff's First and Fourth Amendment rights have been violated by the Individual Defendants. Assuming that Plaintiff has established a violation, the Court finds the constitutional rights that Plaintiff seeks to vindicate were clearly established by case law at the time of the alleged injury. Thus, the critical issue is whether a reasonable officer could have believed his conduct was lawful.

12

The Court finds that Defendants have failed to meet their burden to show that a reasonable officer could have believed his or her conduct was lawful.

Accordingly, the Court DENIES Defendants' motion for summary judgment on the ground that the Individual Defendants are entitled to qualified immunity.

## V.  CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment as follows:

(1) Plaintiff does not have standing to assert constitutional claims on behalf of the patrons of Little Franks; therefore, this case is limited to Plaintiff's individual claims;

(2) The Court GRANTS Defendants' summary judgment as to Plaintiff's Second and Third Causes of Action for violations of 42 U.S.C. §§ 1985 and 1986;

(3) The Court GRANTS Defendants' summary judgment as to Plaintiff's First Cause of Action for violation of the Fourteenth Amendment;

(4) The Court DENIES Defendants' summary judgment as to Plaintiff's First Cause of Action for violations of the First and Fourth Amendments; and Plaintiff's Fourth Cause of Action for violations of Article I, §§ 7(a) and 13 of the California Constitution.

Dated: February 6, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

James Michael Barrett jb@jamesbarrettlaw.com
Kimberly E. Colwell kcolwell@meyersnave.com
Montgomery Scott Pisano mpisano@plg1.com
Tricia L. Hynes thynes@meyersnave.com

**Dated: February 6, 2009**                    **Richard W. Wieking, Clerk**

                                               **By:  /s/ JW Chambers**
                                                     **Elizabeth Garcia**
                                                     **Courtroom Deputy**

**United States District Court**
For the Northern District of California